### CORNELIA WEST *v.* THE WEST & EAST R. R. Co.

1. RAILROADS. *Proceedings to condemn land. Description of land in petition.*
   Where a railroad company has made an actual visible location of its line by driving stakes, blazing trees, etc., a reference to the land in the petition for condemnation as "the land on which the road has been located" is sufficiently accurate to notify the owner what property is sought to be condemned.

2. SAME.  *Verdict of condemnation.  Collateral attack.  Pleading.*

A replication alleging facts which if proven would show that the verdict of condemnation under which a railroad claims to have entered land was in fact no verdict at all but merely a void act of unauthorized individuals, is not an attempt to attack the verdict collaterally.

3. SAME.  *Power of jury over verdict after dispersal.*

A jury summoned to assess the damages for land sought to be condemned by a railroad, having signed their verdict and dispersed, becomes then *functus officio*, and any subsequent act done by them is of no more effect than an act by any unauthorized individuals.

4. SAME.  *Delivery of verdict for deposit.*

Having signed their verdict and delivered it to a messenger to be deposited with the proper custodian thereof, the jury has no further control over it and cannot afterward act judicially in reference to it.

5. SAME.  *Suppression of verdict by railroad.  Estoppel.*

If a railroad company prevail upon a party to whom a verdict of condemnation has been intrusted for delivery to the proper custodian to suppress it, it cannot afterward take advantage of its own wrong by insisting that an actual return was necessary to give it validity as a final and complete adjudication.

APPEAL from the Circuit Court of Holmes County.

HON. CHAS. H. CAMPBELL, Judge.

The facts are stated in the opinion.

*Gwin & Noel,* for the appellant.

1. Under our view of the law, it seems clear that the frauds and deviations from the prescribed mode of condemnation nullify the whole proceedings, and can be interposed in its avoidance either collaterally or otherwise.  As there is no provision for an appeal from the verdict, and as under a writ of *certiorari* the inquiry would be restricted to an examination of the record, 57 Miss. 163; in such a proceeding, proof would be inadmissible to show that the essential parts of the record were outright forgeries, or, as in this case, were fraudulent fabrications.  This suit is therefore as direct a proceeding as appellant could take to avail herself of the irregular and fraudulent acts named and to obtain the redress sought. As to this part of our case we rely on the following legal propositions of obvious application, which we cite almost without comment.

A statute providing for condemnation of land must provide a remedy for certain and adequate compensation, otherwise the statute is void and the owner is entitled to legal and equitable remedies for the protection of his property against acts and proceedings under color of the statute. Pierce on Railroads 162 *et seq.*, and also 146. If the remedy of condemnation legally provided is insufficient, the courts will not create one. 3 How. 240. The delegated power to take private property for public use is in derogation of common law, and exists only when conferred and to the extent conferred. Pierce on Railroads 145 and 170; Vol. I, Redfield on Railroads 249 and 285. The power of divesting title by statutory modes must be executed precisely as it is given, and any departure vitiates the whole proceedings. 46 Miss. 11. Where a State constitution is construed to require a payment of the compensation to precede an entry for construction, the company is held to be under a prior obligation to initiate the proceedings for an assessment, and if it enters without doing so it is a trespasser. Pierce on Railroads 178; 37 Miss. 700 and 172; 36 Miss. 300, and 54 Miss. 259. The title to land for taking which proceedings have been commenced vests in the company only when it has fully complied with the conditions of the precedent and paid or deposited the compensation as required by law. Pierce on Railroads 171; Vol. I, Redfield on Railroads 251; Cooley's Const. Lim. 527. The denial of all opportunity to be heard on the right to and amount of compensation would be depriving the citizen of his property without due course of law. Pierce on Railroads 182. In the case now before the court no such opportunity was allowed, and the required five days' notice was thus rendered nugatory. To the same effect is Cooley's Constitutional Limitations 563, which declares that in matters of condemnation of lands the party in interest is entitled to have an impartial tribunal and the usual rights and privileges which attend judicial investigations. The charter contained no provision for summoning a second jury in case of the disagreement of the first, and under the authorities before cited it is improbable that the omission will be supplied by the courts; and if such a course was under any circumstances permissible, another jury should

have been immediately summoned under the first writ or else the proceedings should have been begun *ab initio,* and not merely confined to the issuance of new writs on the old application.

2. While it is true that railroads can be "given power and authority to enter up and pass through and over any land on the contemplated route," while committing only necessary and unavoidable injury, yet it is a palpable violation of the constitution to authorize them, in addition, "to occupy the same when locating the road and when the road is located, to have and hold said lands for their use" until six months after the return of a verdict assessing damages, at which time, or any time during that period after verdict returned, title may be vested upon by depositing damages with the clerk. "According to the charter, a jury is directed to be summoned by the sheriff to go upon the land and estimate damages. No one is authorized or permitted to direct them in matters of law. They are left entirely to the mercy of their ignorance." Brief in *Isom's Case,* 36 Miss. 304. Fraud vitiates everything, judgments as well as contracts, 5 How. 562, and can be proved by parol. 46 Miss. 669. In the light of the authorities applied to the facts admitted on demurrer, we are convinced that the condemnation is void, and a court has no "power to declare that a void judgment or decree shall have validity anywhere or under any circumstances. It may be attacked either directly or collaterally." *Plummer* v. *Plummer,* 37 Miss. 199.

*J. L. Harris,* of counsel, on the same side.

*Calhoon & Green,* for the appellee.

The sole question here is whether a verdict of condemnation, rendered in direct accordance with the statute upon proper notice to the parties, can be *collaterally attacked.* It is not claimed that the fraud is in the verdict as rendered, but that another verdict of disagreement preceding this one had been obtained by fraud. The only proper replications to second plea were *nul tiel record,* and that the money had not been paid. The jury passed upon this last issue; the first was not tendered. The attempted replication was that the verdict was obtained by fraud. This question cannot be raised in this suit. It is admitted that there was

jurisdiction of the person and the subject-matter. No objection is raised that the statute was not complied with. "The parties to an action cannot impeach or set at naught the judgment in any collateral proceeding on the ground that it was obtained by fraud or collusion. *It is their business to see that it is not so obtained.* If, without any fault or neglect of one party, his adversary succeeds by fraud in obtaining an inequitable and unauthorized judgment he must take some proceeding prescribed by law to annul the judgment, and cannot in the absence of such amendment treat it as invalid." Freeman on Judgments, § 334. Final award in condemnation proceedings is *res judicata* and cannot be attacked collaterally. Pierce on Railroads 189. The verdict of condemnation is sufficiently certain, but if not possession was taken. Pierce on Railroads 180. No action is maintainable for entry for preliminary survey where no unnecessary damage is done. Pierce on Railroads 194. The jury found for defendant, and the judgment should be affirmed.

Cooper, J., delivered the opinion of the court.

This is an action of trespass *quâre clausum fregit* brought by the appellant against the appellee to recover damages caused by the construction of the road of the appellee over certain lands of the appellant. The defendant justified its entry by setting up a condemnation of the land under the provisions of its charter.

The plaintiff replied in substance: First, that some of the trespasses complained of were committed prior to any proceedings to condemn; second, that the defendant trespassed by digging upon other parts of the land than that condemned; third, that the verdict and condemnation under which the defendant claimed to enter was void for the reason that there had previously been an award of damages by the verdict of a jury summoned on the petition of the defendant, which verdict, after it had been rendered and subscribed by the jury and intrusted to one of the jurors to be by him deposited in the proper office, was by the fraudulent conduct of the defendant prevented from reaching its destination, and in substitution of which the defendant procured those

persons who had served as jurors to make and deposit in the office of the circuit clerk of the county (where by the charter of the company verdicts of juries in condemnation proceedings were required to be deposited), a certificate that they had failed to agree upon a verdict, and thereupon had procured the issuance of an alias writ of *ad quod damnum,* upon which the verdict had been rendered under which the defendant had entered; fourth, that the proceedings to condemn were void because the petition for condemnation failed to describe the land which the company proposed to acquire; and fifth, that the company had not paid the amount assessed as damages by the jury before its entry.

Demurrers were sustained to the third and fourth replications as above noted and issues joined on the others on which there has been a verdict and judgment for the defendant. We are satisfied that the finding of the jury was in conformity with the testimony. The demurrer to the fourth replication was properly sustained. The petition states that the line of the railroad had been located over the land of the plaintiff, which was correctly described, and the proof shows that at the time the petition was filed both the preliminary and final surveys had been made. The verdict of the jury shows that the jurors had "carefully examined the land along the line of said railroad" and had estimated the damage "done to the land by the construction of a railroad to the extent of fifty feet on each side of the fifty feet of said line." It is shown by the evidence that the road had not been constructed at the time of the award by the jury, but we think it is sufficiently shown that the "location" had been made by visible marks indicating the line. We know as a matter of general history of these enterprises that the final surveys are indicated by such markings, by pegs in the open fields, and by "blazing" the trees along the line where it passes through timbered lands. No objection was taken by the plaintiff at the time of the proceedings to condemn. It appears that the jury viewed the land "along the line" of the road and we think that it must be assumed that the location referred to in the petition was an actual visible location of the line. Under such circumstances a reference to the land as that on which the

---

Continuance of the opinion.

---

road had been located was sufficiently accurate to notify the owner what property was sought to be condemned. The ground of the demurrer to the third replication was that by it the plaintiff sought to attack the verdict of the jury collaterally. To us it seems that the effect of the replication was not to attack the verdict, but to establish the true verdict and to show that the verdict relied on was no verdict whatever, that the issuance of the second writ was unauthorized and the proceedings thereunder a nullity.

The charter of the defendant provides that "upon the application of either party the clerk of the circuit court in the county in which the land lies shall issue a writ of *ad quod damnum*, directed to the sheriff of said county, who shall immediately upon the reception of said writ cause a jury of seven good and lawful men to be on said land on a day appointed, of which five days' notice shall be given to the party or parties, which jury, after being duly sworn by said sheriff to make true and lawful inquest of the damages suffered by such owner or estate by reason of the construction of said road through said land, shall proceed to view such land and ascertain and assess such damages. The verdict of inquest of such jury shall be returned to the office of said clerk, and if the said company shall within six months after such return pay the amount thereof into the hands of such clerk, for the person or persons entitled thereto, the title to such lands shall at once vest in the said company."

By her replication the plaintiff proposed to show that the jury which was impaneled by the sheriff did meet and take the oath and assess the damages and agree upon a verdict and reduce it to writing, and sign and subscribe it, and commit it to the hands of one of their number, to be by him delivered to the proper office, and that thereupon the jury dispersed and never again met.

But for the fraud of the company this verdict we must suppose would have been delivered by the party to whom it was intrusted, and if this had been done it is apparent that no subsequent jury could have been impaneled to make another award. The jury, having agreed upon the verdict as stated in the replication and placed it in the hands of a messenger to be delivered to the clerk

of the court and having dispersed to their homes, had no further power or control over the verdict. It was the duty of the person to whom it was delivered to convey it to the office designated for its deposit, and if the railroad company prevailed upon him to suppress it, it could not take advantage of its own wrong by insisting that an actual return was essential to give it validity as a final and complete adjudication. The act of the persons who had composed the jury in subsequently signing and returning a certificate that the jury could not agree was a nullity, for it was but the individual act of each of the persons and not the act of the jury.

The object of the plaintiff was then not to attack the verdict of the jury collaterally, but to show that what purported to be the verdict was not in truth a verdict at all, but the certificate of private individuals, which itself contradicted the true record.

How does the act of the company stated in the replication differ in its practical effect from the forcible caption of the verdict from the custodian to whom it was committed? The juror who took the award held it as the mere messenger of the body by whom it had been found; the jury having dispersed became *functus officio*, and could no longer do any judicial act; whatever those persons who had composed the jury afterward did was done not officially nor with power to bind or to release any one, and though they professed to act as a jury their assumption of authority was of no effect. If, therefore, the facts stated in the replication are susceptible of proof, it will follow that unless the damages awarded by the jury whose verdict was suppressed were deposited by the company for the plaintiff in the hands of the proper officer prior to the entry of the company on her lands, such entry was a trespass, and the plaintiff is entitled to recover.

*The judgment is reversed, the demurrer to the replication overruled.*